IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01556-AP

EDUARDO A. DELGADILLO,

     Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant-Appellee.

and

Civil Action No. 06-cv-2186-AP

ROBERT D. WINSTON,

     Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant-Appellee.

---

## MEMORANDUM OPINION AND ORDER

---

Kane, J.

     Identical motions by the same counsel have been filed in both of the above

captioned cases. The rulings are identical. This opinion refers only to Winston, but

applies to both. The motions are to amend and set aside an alleged wrongful offset of

Equal Access To Justice (EAJA) attorney fee awards pursuant to Rule 60(a) and (b) of

the Federal Rules of Civil Procedure. It is prudent to write a detailed opinion and order

because the motions involve a conflict in federal interests presented by a recent development in the payment of EAJA fees in which the Department of the Treasury (Treasury) is offsetting social security claimants' EAJA awards in order to pay claimants' delinquent child support obligations and no opinion on the subject has yet been issued by a judge in this district. Moreover, the indiscriminate use of "attorney fees" and "attorney's fees" infuses both the statutes and case law on the subject of attorney fees and causes confusion and contradictory rulings throughout our jurisprudence.

Robert D. Winston and Eduardo A. Delgadillo (hereafter Winston) won their respective lawsuits against the Social Security Administration and thus became entitled to EAJA fees. The EAJA provides a fee-shifting mechanism that allows a qualified person to recover both court costs and fees when he prevails in a civil suit against the government. 28 U.S.C. § 2412(d)(1)(A) ("a court shall award to a *prevailing party . . . fees and other expenses . . . incurred by that party*")(emphasis added)). The Tenth Circuit Court of Appeals, interpreting "prevailing party," has held that "an EAJA award is to the claimant." *McGraw v. Barnhart,* 450 F.3d 493, 497 (10th Cir. 2006).[1]

I ordered the Social Security Commissioner to pay the EAJA fees. Dutifully, the Commissioner submitted a request to the Treasury for payment. Winston, however, owed outstanding child support payments. Rather than receiving checks from the

---

[1] I note also the statute says fees "incurred by that party." It does not say fees charged or claimed by counsel.

Treasury,  as had been his experience in previous cases, plaintiff's counsel received a

letter notifying him that Winston's EAJA fees had been offset to satisfy debts  for

delinquent child support.  He therefore moved for an amended order to place the EAJA

fees directly in his name, rather than Winston's.  He argued the policy underlying EAJA

deprived the Treasury of the authority to offset prevailing social security claims

plaintiffs' EAJA fees.  I denied the motion.  Winston then filed the instant motion

pursuant to F.R.Civ.P. Rule 60.  I called for briefs and ordered the Treasury to abate

offsetting Winston's EAJA fees until the motion could be argued and decided.

Winston requested that (1) no decision be made until the Tenth Circuit decides

the pending appeal in *Manning v. Astrue*, No. 06-7127 (10th Cir. Filed Jan. 8, 2007), (2)

that I allow Winston to supplement the amount of attorney fees based on the additional

litigation, (3) that I order the Social Security Commissioner to pay either the approved

fees directly to the attorney in the attorney's name or that the EAJA fees be paid to

Winston as a representative payee for his attorney.

The Commissioner asks me to find that the EAJA award belongs to Winston ---

not the attorney--- and, because Winston was delinquent in his child support payment

obligations, that the administrative offsets were proper.

I read the briefs in *Manning v. Astrue* and decided its outcome would not resolve

the instant case, and therefore set the motion for oral argument following submission of

briefs.  I rule as follows.

SUPPLEMENTATION  OF  EAJA APPLICATION

Winston wishes to supplement the EAJA application to include amounts for his

attorney's services rendered in defending the EAJA awards.  He cites no authority, but

the Commissioner does not oppose the request.  Case law supports this position. *E.g.*

*Childress v. Sullivan,* 742 F.Supp.1088 (D. Colo. 1990)(holding that prevailing plaintiffs

are entitled to fees and expenses relating to work on fee applications, including time

relating to their second supplemental memorandum and motion for reconsideration).

Therefore, the proposed supplements to the applications will be permitted.

## ISSUES

The asserted pivotal issues are whether (1) the Treasury may offset a claimant's

EAJA fees to satisfy his outstanding child support obligations, thereby depriving the

claimant's attorney of payment, and whether (2) such an offset's chilling effect on the

representation of Social Security claimants is outweighed by the government's interest in

collecting delinquent child support payments.

## DISCUSSION

1. EAJA's Plain Language

Because EAJA's plain language provides the claimant himself is entitled to the

award, and because the Tenth Circuit has interpreted EAJA's language to this effect,

there was no "clerical mistake" in awarding Winston – and not Winston's attorney – the

EAJA fee.  The Tenth Circuit's pronouncement that "an EAJA award is to the claimant"

does not admit ambiguity.  Although mistakes caused by clerical errors, inadvertence,

etc., may be corrected by the court at any time, Fed. R. Civ. P. 60(a)-(b), correction is not

available simply to change a result where no such mistake has occurred.  There was no

mistake in directing the award to Winston who was the "prevailing party."  The statute

dictates that Winston – and only Winston – was entitled to receive the award, subsequent

offsets notwithstanding.

2. Confusion in the Decisional Law

Despite the clarity of EAJA's assignment of fees to the prevailing party,

confusion abounds in decisions determining whether EAJA fees belong to the claimant or

to the claimant's attorney.  Winston cites two district court decisions from this circuit –

one published and the other unpublished – to support his position.  These decisions,

however, are not persuasive because they are contrary to EAJA's plain language and the

Tenth Circuit's explication of that language.

In *Dixon-Townsell v. Barnhart*, the district court held a claimant's EAJA fees

could not be offset by the Treasury because doing so would defeat EAJA's purpose of

providing compensation to attorneys representing Social Security claimants. 445

F.Supp.2d 1283, 1284 (N.D. Okla. 2006).  That court found "no authority to grant

Plaintiff, rather than Plaintiff's Counsel, attorney fees pursuant to EAJA." *Id.*  Reasoning

by analogy to a Tenth Circuit decision that denied a *pro se* plaintiff EAJA fees, *Demarest

v. Manspeaker*, 948 F.2d 655 (10th Cir. 1991), the court concluded EAJA "intended to

compensate Plaintiff's attorney, not generate income for a claimant," and therefore

ordered the Commissioner to pay the award directly to the attorney.  *Dixon-Townsell*,

445 Supp. 2d at 1283.

Similarly, in *McKee v. Astrue*, another district court ordered direct payment to the

attorney of an EAJA award, No. CIV-05-359, slip op. (E.D.Okla. Jun. 13, 2007).  The

court found first that *McGraw's* pronouncement that "an EAJA award is to the claimant,"

when viewed in context, referred only to the "underlying rationales" of an EAJA award

and a Social Security Act (SSA) award.  *Id.* at 2.  Because *McGraw* dealt with a situation

where both EAJA and SSA awards were made, the court held *McGraw's* description of

EAJA awards as belonging to the claimant was (apparently) inapt in *McKee's* situation

which dealt only with an EAJA award. *Id.*   Furthermore, because *McGraw* stated

"[a]ttorneys handling Social Security proceedings in court may seek fees for *their* work

under both the EAJA and the SSA," quoting *McGraw*, 450 F.3d at 497 (emphasis added),

the court reasoned the award should be paid directly to the attorney.  *McKee,* slip op. at

3.[2]

  Though Winston argues *Dixon-Townsell* and *McKee* are dispositive, his position

and that of the two district court decisions are incompatible with both EAJA's plain

language and the Tenth Circuit's interpretation of that language for two reasons.

  First, Congress drafted the statute to say the fee would be paid to the prevailing

party himself.  Nowhere does EAJA say the fee award is to be paid directly to that party's

attorney.  Indeed, EAJA itself contradicts this assertion.  Section 2412(d)(1)(B) states

that, to collect EAJA fees, the prevailing party must provide "an itemized statement from

any attorney or expert witness representing or appearing in behalf of the party"

computing the appropriate fees.  The fact EAJA groups the prevailing party's attorney

with others who may have contributed to the litigation suggests the party's attorney

occupies no special place in the statutory schema that would authorize him to receive

fees directly.  Both *Dixon-Townsell* and *McKee* ignore the text of the statute and base

their decisions on surmise about policy.

---

  [2] Emphasis is added to note the attorneys are not parties to the action and applications were made on behalf of and in the name of the party, not the attorney.

The statute is hardly aberrant.  The traditional "American Rule" is that in the absence of a statute specifically authorizing the shifting of fees from one party to another, each party is responsible for his own attorney fees and costs.  Two exceptions to this Rule, not applicable here, are bad faith and common fund.  The bad faith exception allows a court to award fees when the opposing party has willfully disobeyed a court order or when the losing party has engaged in vexatious, oppressive or wanton actions. The common fund doctrine permits litigants to recover or preserve funds of others as well as themselves to subvent litigation costs out of the common recovered funds. *See generally*, Wright & Koch, Federal Practice & Procedure: Judicial Review § 8315. Similarly, several statutes authorize the shifting of fees to obviate the Rule.  Compliance with the requirements of a statute thus must be satisfied before an award can be made. *E.g. Scarborough v. OPM*, 723 F.2d 801, 818 (11th Cir. 1984).  In none of these circumstances is the fee shifted to the attorney.  The shift is always to the litigant.

Second, *McGraw's* language that "an EAJA award is to the claimant" is not so limited to context as *McKee* suggests.  The quote does indeed appear in a discussion of the differences between SSA and EAJA awards, but the scope is broader than *McKee* describes.  Not only does the discussion appear in a section entitled "Fees in Social Security Cases," but the opinion cites EAJA's language as support for its statement that "an EAJA award is to the claimant."  *McGraw*, 450 F.3d at 497.

Because of EAJA's unequivocal language, the Tenth Circuit's interpretation of it, and the flawed decisions to the contrary, Winston's argument that policy entitles his attorney to receive EAJA fees directly fails.

3,  Grammar-as-Perpetuator

7

Although EAJA uses the term "prevailing party," district and appellate opinions regularly and indiscriminately use "attorney fees" or "attorney's fees" when discussing EAJA awards.  This frequent commingling of "attorney fees" with "attorney's fees" creates (or at least perpetuates) the confusion over the concept of awarding fees itself.[3]

"Attorney fees" employs "attorney" as a noun adjunct to "fees," connoting fees that result from the retention of an attorney rather than the performance of legal services. "Attorney's fees," however, employs "attorney's" as a possessive noun attached to "fees" connoting a fee belonging to the attorney, not the client.

Though semantic in nature, this logomachy has a wide-reaching effect: constantly referring to a fee award as an "attorney's fee" reinforces the fanciful conclusion that the award belongs to the attorney.  Despite EAJA's pellucid language that the "prevailing *party*" (emphasis added)  receive the award, the indiscriminate or insouciant use of "attorney's fee" by courts and lawyers in describing the nature of the

---

[3] A sampling of recent Tenth Circuit cases dealing with EAJA fees suggests  there is no consistent usage of "attorney" or "attorney's" when discussing fees.  *See Hackett v. Barnhart*, 475 F.3d 1166 (10th Cir. 2007) (consistently employing "attorney fees"); *FTC v. Kuykendall*, 466 F.3d 1149 (10th Cir. 2006) (same); *FTC v. Freecom Commc'n, Inc.*, 401 F.3d 1192 (10th Cir. 2005) (same); *Sloan v. Pugh*, 351 F.3d 1319 (10th Cir. 2003) (same); *FDIC v. Schuchmann*, 319 F.3d 1247 (10th Cir. 2003) (same); *Fraizer v. Apfel*, 240 F.3d 1284 (10th Cir. 2001) (same); *Shooting Star Ranch, LLC. v. United States*, 230 F.3d 1176 (10th Cir. 2000) (same); *Villescas v. Abraham*, 311 F.3d 1253 (10th Cir. 2002) (consistently employing "attorney's fees"); *McGraw v. Barnhart*, 450 F.3d 493 (10th Cir. 2006) (using "attorney fees" and "attorney's fees" interchangeably).  *See also,* the archetype of attorney fee cases, *Alyeska Pipeline Services v. Wilderness Society*, 421 U.S. 240 (1975).

fee exacerbates this confusion.  The result is construction through carelessness rather

than perception.[4]

Although it ordinarily would be unduly pedantic to comment further about basic

rules of grammar, the cases cited in footnote 3, *supra*, as well as the instant case illustrate

the need for a brief comment.  As stated in The Columbia Guide To Standard American

English (Columbia Press, N.Y. 1993 ed.), p. 300,  "[a] noun adjunct is a noun positioned

to modify another."  The use of an apostrophe, however, in this relevant instance

connotes the genitive or possessive case.  *Id.* at 210.  The semantic change is thus

substantive and conceptual.

4. Competing Federal Interests

No one disputes the proposition that an EAJA award ultimately should go to the

prevailing party's attorney in payment by the party for services rendered.  In the case of

an administrative offset to pay the claimant's outstanding child support obligations

(thereby in practical terms depriving the attorney of the fees earned), however, there are

competing federal interests.  Although the Commissioner fails to address policy

---

[4]        Our civilization is decadent and our language –so the
          argument runs— must inevitably share in the general
          collapse.  It follows that any struggle against the abuse of
          language is a sentimental archaism, like preferring candles
          to electric light or hansom cabs to aeroplanes.  Underneath
          this lies the half-conscious belief that language is a natural
          growth and not an instrument which we shape for our own
          purposes. . . . The point is that English, especially written
          English, is full of bad habits which spread by imitation and
          which can be avoided if one is willing to take the necessary
          trouble.

George Orwell, Politics and the English Language, in *Essays*, (Horizon, GB, London
1946).

arguments as to the chilling effect administrative offsets of EAJA awards may have on attorney representation of impecunious clients, the competing federal interest tilts the balance in the Commissioner's favor because of the EAJA's clear language, the administrative offset statute controlling the Treasury, and an executive order requiring administrative offsets to pay delinquent child support.  These factors also inform the principle that competing federal interests need to be sorted out by Congress rather than the courts.

Winston offers three arguments on the competing federal interests issue. Two of these arguments –(1) because an EAJA award would not be available to a *pro se* plaintiff, the award is necessarily intended for the attorney, and (2) that the reasoning in *McKee* suggests that an EAJA award may go directly to the attorney – are repeated from Winston's previous briefs.  The first argument has been rejected because EAJA's  plain language and the Tenth Circuit's interpretation of that language do not permit it. Moreover, the argument is facile.  The purpose of fee-shifting statutes is to free the litigant from burdensome expenses that might chill assertion of valid claims.  *Demarest v. Manspeaker's* message is sensible and simple: a *pro se* litigant has not incurred the burden of expense in hiring an attorney and his presence in court refutes the existence of a chilling effect on the pursuit of his claim.  The second argument relies largely on the unpublished, logically questionable decision in *McKee v. Astrue, supra*, at p.6.

Winston next observes the Commissioner of Social Security's past practices in awarding EAJA fees.  Until the Spring of 2007, Winston writes, the Commissioner would agree to have EAJA fees paid directly to counsel.  (Pl.'s Supp. Mot. 2.)  Although the text of EAJA has not changed, the Commissioner changed his position and now insists that

EAJA fees be awarded to the claimant. (Pl.'s Supp. Mot. 2-3.)  This new policy, of

course, makes EAJA fees subject to administrative offset.

Winston does not argue the Commissioner cannot change his longstanding policy

in order to comply with the plain language of the statute.  One of Winston's attachments

to his briefs, however, does offer some arguments on this point (Doc.26-2.)[5]  Although

all these arguments point out legitimate policy concerns, they do not evade  EAJA's plain

language.  *Alyeska*, though not cited by either of the parties, is instructive here.  In

*Alyeska*, the Court held the judiciary does not have a "grant of authority" to "jettison the

traditional rule against nonstatutory allowances to the prevailing party and to award

attorneys' fees [sic] whenever the courts deem the public policy furthered by a particular

statute important enough to warrant the award." 421 U.S. at 263-64.  Though the Court

holds that Congress has the power to "pick and choose among its statutes and to allow

attorneys' fees [sic] under some, but not others," the courts may not "consider some

statutes important and others unimportant and . . . allow attorneys' fees [sic] only in

---

[5] According to *Social Security Forum*, a newsletter published by the National
Organization of Social Security Claimant's Representatives, general reasons include:

• An EAJA award is the property of the lawyer, since an unrepresented plaintiff is not
entitled to any EAJA payments at all.
• If the government offsets EAJA fees to pay clients' debts, fewer attorneys would risk
representing these debtors and the doors of the court would be closed to them—directly
contravening EAJA's purpose.
• It is illogical and unreasonable to think that Congress intended the client's federal debts
to be paid off based on the legal work performed by his attorney. The more hours the
attorney works on the case, the greater would be the payoff the client receives.

"EAJA Payment Issues: An Update," 29 *Social Security Forum* 1, 5 (June 2007).  The
first bullet point is conceptually incorrect.  The remaining two are matters of policy to be
addressed by Congress.

connection with the former." *Id.* at 264. Because Winston does not have a convincing

argument addressing the issue of competing federal policies, and the Supreme Court has

ruled that courts may not award fees willy-nilly if not prescribed by statute, Winston's

position is untenable.

The Commissioner, too, makes three arguments: (1) EAJA's plain language

makes fees payable to the claimant, (2) the Treasury is required by statute to offset child

support payments, and (3) the issue of competing federal interests is solved by the Debt

Collection Improvement Act's specific purpose of collecting delinquent child support

payments.

Because no exception for EAJA fees exists in the statute allowing for

administrative offsets, the Commissioner argues the Treasury was required to offset

Winston's EAJA award to pay his delinquent child support.  Because the statute is clear

and unambiguous, the Commissioner argues, I should deny Winston's request that the

Treasury ignore its statutory duty.

This statute supports the argument.  The Treasury can offset any payment by the

amount owed to a "creditor agency." 31 U.S.C. § 3716(c)(1)(A).  Section 3716 offers few

exceptions to these offsets, and EAJA fees are not among those enumerated.

§ 3716(c)(1)(A)-(C).  A readily perceptible inference from § 3716's omission of EAJA

fees in its enumerated exceptions is that Congress did not specifically intend to except

EAJA fees from administrative offset.  Accordingly, there is no statutory impediment

forbidding the Treasury to offset EAJA awards.

Winston's alternative request,  asking that I order the EAJA fees paid to him as a

representative payee for his attorney, does not allow him to avoid the debt collection

statute.  Parties subject to offset include "joint payees," "representative payees," and "assigned payees." 31 CFR § 285.5(e)(4)-(6).  In all three cases, any payment to which a debtor is a party may be offset. *Id.*

Regulations on the Treasury's power to collect nontax debts provide that "an assigned payment will . . . be subject to offset to collect a delinquent debt owed by the assignor . . . ." 31 C.F.R. § 285.5(e)(6)(ii).  Because Winston would be the assignor, and his attorney would be the assignee, even if Winston's motion were granted, the Treasury would still be entitled to offset his EAJA fees, despite his attorney's claimed interest.

Winston is further limited by regulations on similar, alternative arguments.  If Winston had argued that he and his attorney were joint payees, he would run afoul of regulations providing  that "the entire payment . . . will be subject to offset for a debt of either payee." 31 C.F.R. § 285.5(e)(4).  Because Winston owed debts subject to administrative offset, the Treasury would have been authorized to offset his EAJA fees despite his attorney's claimed interest.  Had Winston argued that his EAJA fees should have been paid directly to his attorney, a second regulation provides that when a payment is made to a representative of another who has a beneficial interest in that payment, the Treasury may offset the payment "to collect debts owed by the person having the beneficial interest in the payment." § 285.5(e)(5).

Because Winston holds the beneficial interest in the EAJA fees (as discussed above), the Treasury would have had the authority to offset those fees, again despite his attorney's claimed interest.  Therefore Winston's request that his attorney be directly assigned payment of the EAJA fees (thus circumventing his outstanding debts), is prohibited by the regulations.

13

The Commissioner's final argument is that the Debt Collection Improvement Act of 1996 (DCIA) dictates that payment of delinquent child support trumps the policy concerns surrounding EAJA. The DCIA was accompanied by Executive Order No. 13019, entitled "Supporting Families: Collecting Delinquent Child Support Obligations." Exec. Order No. 13019, 61 F.R. 51763 (Sept. 28, 1996), *reprinted in* 31 U.S.C.A. § 3716 at 174-74 (2003). This order requires the Secretary of the Treasury "promptly [to] develop and implement procedures necessary for the Secretary to collect past-due child support debts by administrative offset . . . ." Exec. Order No. 13019 (a)(1).

Because an executive order dictates an agency's policy unless or until Congress enacts a statutory policy, it is important to note when the statute was enacted, when the agency regulations were put in place, and when the executive order was issued. *See generally*, 32 Wright & Koch, § 8277 ("[E]xecutive orders bind the agencies" and "have the force of law in the same way as legislative rules."). In this case, Executive Order 13019 was issued September 28, 2006. The DCIA was enacted on April 26, 1996, before the Executive Order. The debt collection regulations, which provide that all payments may be offset in order to collect past-due child support, 31 C.F.R. § 285.1(I), were published in the Federal Register on July 7, 1997, and August 28, 1997.

Because EAJA fees are not exempted from § 3716, and because Executive Order No. 13019 prioritizes the collection of past-due child support payments, the Commissioner concludes that any question as to the controlling public interest is answered. Although this argument fails to answer the policy questions surrounding the chilling effect that administrative setoffs of EAJA fees may have on attorney representation of indigent social security claimants, it does have more support than any

14

argument offered by Winston.  For this reason, the policy question weighs heavily in the Commissioner's favor.

For the above stated reasons, offsets by the Treasury are lawful and appropriately applied to awards under the EAJA.  Accordingly, the motion is denied except for the request to supplement the fee application by adding the value of services rendered in defense of the EAJA awards.  These may be added by filing amendments to the applications.

Dated August 21, 2007.                                      **s/John L. Kane**
                                                             SENIOR U.S. DISTRICT JUDGE